May it please the Court, I do intend to reserve two minutes for rebuttal. And as I understand, I get to piggyback off of the earlier arguments made this morning and those made by my esteemed colleague, Mr. Link, just prior on the Gunther V. Lynn arguments, which is one of the main issues in our case here. And your honors had referenced one of the cases on calendar where the parties that you had stated had stipulated to no intent, and I believe you're referring to this case, because in this case I'm glad I wasn't making it up. No, you were not. In this case, with Harris in mind, at the time of the deposition, the plaintiff was asked whether he believed Del Taco intended to prevent him from using the restroom, and he stated unequivocally no. What exactly was he asked? What was the exact language? I can quote it for you. Here we go. Do you have any reason to believe that Del Taco intended to prevent you from using the restroom? Is that the question? Correct. Witness stated no. And I believe that is critically important here. There was a discussion earlier about what the definition of intent really is, and in cases where you're dealing with a preexisting facility, this one being built in 1980, opening in 1981, you can't look to, as Mr. Munson has argued, whether the parties intended to construct the facility and have it the way it was. And in Mr. Munson's brief, he relies heavily on the modern development case. That case did not involve any statutory interpretation at all, but rather involved determining for purposes of insurance liability coverage what the definition of occurrence. It had everything to do with insurance, nothing to do with statutory interpretation of the UNDER Act. Moreover, the quote in which Mr. Munson relies in his brief on modern development is not what the court held at all, but it was rather a statement directly from the briefs of one of the parties. In this case, whether or not the parties, whether or not Del Taco intended to construct its facility the way it was in 1981, it doesn't have, it doesn't tie in with what the ADA required the parties to do, assuming it was readily achievable to do so in 1992. And it also referenced a site from Gunther earlier this morning where you're looking at the size of a restroom stall door and saying, well, something like that, maybe it is intentional, maybe it isn't, that it's a certain width that may be smaller than what the ADA requires. But again, the Gunther case doesn't say that that is. Counsel, let me just ask you this. Gunther, in essence, says, look, Harris is still good law, notwithstanding legislative amendments. So it seems to be just saying we're going to look to Harris as the germinal case, as the place where the California Supreme Court has spoken. And in Harris, there's this kind of summary paragraph that I read earlier where it distinguishes between disparate impact and intent. What do we make of that? How do we interpret disparate treatment or intent in the disability access context? What did the California court mean in Harris, do we know? What the California court meant in Harris, and I think can be applied equally to Gunther, is whether the parties had a knowing intention, in this case, to interfere with the use and enjoyment of the facilities, and their intent to create this disparate impact. If you look at Gunther as finding intent to be, well, they really didn't intend to put this mirror here, they intended to do it there, you're narrowing it so much that it's going to completely swallow up all of what the Disabled Persons Act is intended to do, which is provide damages without the intent requirement. And my colleague earlier... Is the opposing brief correct, and I asked this question before, and demonstrating that this overlap argument, their argument is, is really not worth very much because, in fact, the damages provisions of the two statutes were originally the same, and have been the same at various times. So the notion that they were trying to draw a distinction between $1,000 and $4,000 damages and making it harder to get the $4,000 damages doesn't really seem to be the way the statute developed. Is that accurate? Well, I agree with what Mr. Link had to say, and when you look to the legislative history, they could have changed the language to correspond with that difference in the damages, and they didn't do so in the statute. But there was no difference in damage originally, right? No, originally there wasn't. But as the cases, as the legislative history evolved, then the damages, they did become greater under the UNRRA Act only than they did in the Disabled Persons Act. The, in terms of how Harris, let's leave Gunther out and say we were looking at it fresh, okay? But we were looking at Harris. Or put another way, did Gunther just miss something, which is that the ADA has its own, the UNRRA Act Section 52 uses the term discriminate, right? Correct. Right. Which was one of the terms that Harris relied upon. The ADA has a definition of discriminate in Title III, which seems to be incorporated in the UNRRA Act now. And that definition includes a failure to remove architectural barriers in communications, et cetera. It's heading discrimination, and it says for purposes of subsection A, discrimination includes a failure to remove architectural barriers. So if you just did a literal, ordinary language, plain language, you would say, well, the UNRRA Act says you can recover if you discriminate. It says you incorporate the ADA. The ADA says this is discrimination, therefore you can recover. Now, what's wrong with that? Well, I disagree. The ADA doesn't quite say that. Well, it says exactly that. It says discrimination. For purposes of subsection A of this section, discrimination includes for a failure to remove architectural barriers that are structural in nature. That's what it says. The ADA also states for preexisting facilities that those barriers must be readily achieved. I understand that. But that is all part of the definition of discrimination. You can argue about whether it's readily achieved or isn't, but my point for now just as a linguistic point as to plain language interpretation of the UNRRA Act is that it's incorporated a definition of discrimination, the word discrimination, which is as we've just described. I think you have to look at this in the context of not only what the ADA simply says, but when you're looking at Bass v. Butte, what you're taking from the ADA, you can't broaden the state statute to that extent. The ADA, as Mr. Lincoln said, was intended to bring in certain elements of discrimination that the UNRRA Act had not previously addressed. And it — and that was its purpose. Looking at the legislative history, that was its purpose. So you're arguing that it doesn't apply to physical disabilities at all. Is that what you're arguing? I'm not arguing that. What are you arguing then? I'm arguing that the specific literal language of the ADA, when it's overlaid onto the state statute, you have to look to the prior history, both the case law and the legislative history of that statute, and not overly broaden. But Harris wasn't about how you apply the statute to discrimination legislation, is different in general with regard to the definition of the concept of what it means to discriminate. Well, this is certainly an area that both state courts and federal courts are grappling with and one that really needs to be interpreted, I believe, in the Supreme Court. All right. So in that regard, is your suggestion that we certify this question to the California Supreme Court, that we decide — there are three options. We can say that we're going to abide by our precedent, we can overrule our precedent ourselves, or we can certify it to the California Supreme Court. What is your position? Mine would be the last of those three. I think that's the only way to do it, because if you're looking to what the federal courts say versus what my interpretation is versus what Gunther's interpretation is versus Lentini and versus the Eastern District's interpretation, they're all over the map. And when you're looking to — when the court needs to look, as the Ryan v. Sears case instructs, to what the intermediate courts say, and if that's still unclear and it's unclear from Harris, then this is something that needs to go to the California Supreme Court, as far as I'm concerned, in order to get clarity once and for all. Because otherwise, we'll continue to come through here grappling with the same issues. There's a threat. Well, if we were to follow Gunther, overturn Lentini, then some other division of the California Court of Appeal could disagree with Gunther, and then what would we do? We'd have a 50-50 split. Would we then go back to Lentini? Would we stick with it? What would we do? Exactly. It's a quagmire. But to get back to the discrimination issue in this case, you need to look — the other main issue in this case is what is readily achievable for Del Taco to do. And in this case, as was briefed by both sides, there were alleged issues involving the front entrance, the restroom door, and everything within the restroom. And the district court erred, as a matter of law, in looking at this one restroom door issue in isolation from everything else. And if you look to the final rules that are set forth in the Code of Federal Regulations, the department actually states that — and I can quote it for you — some commenters urge the department not to consider acts of barrier removal in complete isolation from each other in determining whether they are readily achievable. The department believes that it is appropriate to consider the cost of other barrier removal actions as one factor in determining whether a measure is readily achievable. What's the citation on that? This is 56 FR 35544-01 out of the Rules and Regulations, Department of Justice, 28 CFR Part 36. And so — My understanding — Is that cited — excuse me one second. Is that cited in the briefing? It is not. Would you write all that down and give it to Ms. Gurule after the argument? She can circulate that to us. The appellee's answer, I gather, to this argument is that they weren't asking you to do all this. They were only asking you to do — to fix the restroom door. And if you chose to do the restroom, that's not pertinent to the readily achievable calculus. Somewhere they're wrong about that. They — that was their — Are they procedurally wrong? Is that why? Because that's really not all they were asking. Is that your position? Correct. And if you look to their summary judgment papers, if you look to their complaint, if you look to their discovery responses, that wasn't all that they had raised. And the technical assistance manual instructs that restroom accessibility issues are a third priority. And for businesses that are looking at completing remediations, entrance issues and path of travel issues have to come first. Because if somebody is suing you to do X, then to satisfy them, you only have to do X. If it turns out that you're also out of — in violation for other reasons, you can do it, but you can't charge it to them in terms of whether what they've asked for is readily achievable or not. Had — two points on that. Had the plaintiff only been suing for X in this case, only alleged X, that would be a different issue. That's what I'm asking you.  I took the plaintiff's deposition. He complained about the entrance — the front entrance and the slope and trying to get in. That is an issue that even plaintiff contends we don't know if that's readily achievable or not. But that was something that Del Taco needed to address. And in the wake of the decisions in Dorn v. 7-11 and Scaff v. Meridian, where you have a plaintiff who can come in and identify as long as they have one issue that they've identified, then they can take discovery on any other potential barrier to access in that facility. You can't look at it in isolation because if that plaintiff isn't going to raise it later, then somebody else will. Counsel, you've just about used up your time. Thank you. Thank you. I'll move for Mr. Handy. Good morning, Your Honors. I'm Russell Handy. I'm thinking by asking why we shouldn't certify this question at the California — the intent question at the California Supreme Court. What is your argument as to why we should not do that? I just think it would take so long to get a final answer. And getting a ruling out of this court would provide some clarity and some direction for litigants who are knee-deep in this stuff every single day. In fact, the last time that Ms. Whittaker — Well, it would provide clarity in federal court and in — but not in state court because, as Judge Wilkin was pointing out, because Gunther is a court of appeal decision, N. Ray Watts would suggest that we have to follow that rather than Lantini. But it doesn't prevent another state court of appeal or the California Supreme Court from coming in and yet again disagreeing with Gunther. That's true. And if this court were to — let's say this court decided that they were going to stick with the original precedents and they were going to not feel it bound by Gunther. That would provide clarity maybe in the federal system, but it wouldn't help — but I guess it would also be clarity in state courts. The trial-level courts are all bound by Gunther. But the — How could we not be bound by Gunther, whatever it means, in view of our case in N. Ray Watts? I think N. Ray Watts says that a court has to, in light of an inter — there's been a follow-up decision by an intermediate appellate court, that they're bound to reconsider their previous decision. And we're bound to follow state intermediate courts in general unless we're convinced that the state Supreme Court would go the other way. Right. And that would be my argument. I think — What evidence do you have, other than your own logic and arguments, to suggest that the California Supreme Court would disagree with Gunther? Beyond my logical arguments and the arguments that have been made by other courts and just the fallacies that are inherent in Gunther, I have no evidence what the California Supreme Court would do. But I think that any court looking at it when they're making the decision, what would the California Supreme Court do, they're relying on looking at the strength of the intermediate appellate court decision. Is it good law? Does it really make sense? How does it fit? Well, no, no, that's not quite our test. In general, let's say we didn't have Lentini on the books, and we didn't even have Harris. All we had was an intermediate state court opinion. In general, as to a question of state law, we have to follow that, whether we think it's smart or stupid, unless we're convinced that the state Supreme Court would overrule it. Not that it's a good decision or that we're persuaded by it, but that we have to follow it as to state law, with that exception. I'm firmly convinced that if it got to the California Supreme Court, they would overrule it. And the reason why is this. First of all, it runs afoul of just the plain language of the statute itself. I mean, obviously the legislature has the responsibility of crafting law. They've come out with the law, they've incorporated the section of the ADA into the Under Civil Rights Act, and it's very plainly worded. And they've turned, Gunther's turned to a lot of canons of statutory construction, and they've pulled from a huge grab bag to try to support their decision. And in doing so, they've made a lot of mistakes, just about statements of the law. Some of those have been mentioned this morning. But also, they've ignored the statement of general legislative intent that came out with AB 1077, where they said the very purpose of this is to strengthen California law, to bring it up to the standards of the ADA, where it doesn't currently. But the ADA, for private parties, contains no provision for damages. And I'm going to ask you the same question I asked earlier, but I want to get your take on it. Is it at least possible for the legislature to have meant that any behavior or conduct or architectural barrier that violates the ADA also violates the state law? But yet, since there are no damages for private parties under the ADA, the state law could layer on top of that any additional factors it wanted to in terms of what it requires to get damages. So I don't understand yet why it would be inconsistent to say that some kind of intent is required under state law to get damages, even if the conduct is violative of the ADA. Of course it's possible for them to do that. It's just that they haven't come out with that language, and it's not stated in there. What everyone's turning back to is the Harris decision, and the Harris decision simply didn't construe a version of the Under Civil Rights Act that exists at this time. No, but that takes us back to Gunther, which says, notwithstanding all these changes, Harris is still good law, and we're still looking at that. And under Harris, what does intent mean? And that's a really tough issue, because there's so many standards of intent. We have grappled with this issue. In fact, our last case together was a jury trial. We sat there. The judge had to take overnight to consider the matter, read the stuff, as we tried to craft a jury instruction on intent, and it is very difficult. But here's what I think intent means for these cases, what I think is a fair construal, and that is this. If the definition of discrimination under Title III of the ADA is a failure to remove architectural barriers that are irreducible, if that's the definition, then what is an intentional act? The intentional act would be an intentional or affirmative failure to remove architectural barriers. When readily achievable. When readily achievable. Those types of barriers, that's correct. And so if a plaintiff were to prove there's barriers that exist, they are the type that are readily achievable for this defendant, and they've had sufficient control and ability, they've owned this property, they've had the ability to remove this, and now it's been 15 years and they haven't removed it, this should be a prima facie showing that they intend not to remove it. For example... And it's a factual issue as to whether it's readily achievable pretty much in every case, right? It can't be animus against the disabled. That can't be the standard. That's not even suggested anywhere. That would be a remarkable, that would be a ridiculous standard, to say that you have to be motivated by animus against the disabled. Or even if not by animus, by the fact of disability. In other words, you don't necessarily have to be considering the question of whether you want, I mean, you may not want disabled people in your restaurant for some reason having nothing to do with animus. Such as, you know, I feel badly for them because they may fall if they come in here, so I'd rather they not hurt themselves. But that's not a reason. That's not going to work, right? Right. I don't believe that works. I'm sorry. You finished that answer, and then I have another question. I was just going to say that because the definition is just a failure to remove barriers, then the intentional failure to remove barriers, I mean, that's the intentional act. Because we know that the law, I mean, there's so many different types of intent. Even under Title II, to recover damages under the ADA, there's a deliberate indifference standard of intent. And there's so many levels of intent. But there's nothing in, well, there's nothing, I now have two questions. There's nothing in the state law that talks about deliberate indifference, is there? There's no statute that uses that phrase, and there's no California Supreme Court case that uses that phrase. My area of expertise is limited to disability access. In the disability area, is there any statute or California Supreme Court case or California Court of Appeal case that says that deliberate indifference is the standard? I'm not aware of that. Is there any case that says it isn't? No. Has anybody ever raised it? This is all new, right? This is all new. Recently, I've had cases where we have to craft an intentional standard, a jury instruction, and I've had courts that have decided that deliberate indifference is standard. I've had courts that have said that, you know, it's just really, there's no direction here. So you have had some courts who have raised this deliberate indifference question, and it's been accepted at least sometimes. Yes. I've had courts that have gone that way, and I've had courts that have gone other ways. And I want to go back to my original question, because I'm not sure that I understood your answer. You're saying that it has to be an intentional failure to remove barriers when that is readily achievable. Isn't that always going to be a fact question, never subject to summary judgment? I mean, that may be a bad thing or a good thing, but it seems to me that readily achievable is, and that knowing that, that state of mind of understanding that it's readily achievable within the meaning of the law is always going to be a factual issue. I think you misunderstood me. I don't think that the necessary intent is that they have to be aware that it is a barrier or that it is readily achievable. I don't think that's the ---- But it has to be readily achievable. Oh, it does. If it's a single taco stand and it's a $25,000 fix and they make $18,000 a year, it's not going to be readily achievable. So that's always going to be a factual issue. In those types of circumstances, it's very hard to imagine a court granting summary judgment. But that, of course, was true in the Leontini as well and the prior law. Yeah. That doesn't affect that. It's always been the standard. And in this case, one of the reasons why the court found on the summary judgment that it was readily achievable is because we don't have a small taco stand. We have Del Taco, and they in one fell swoop wrote a check for $65,000 to fix everything. And so ---- What things did you ask for in the complaint? Well, that's what I wanted to bring up, but defense counsel was actually wrong. Just tell me what you asked for in the complaint. In our complaint, which is Supplemental Exhibit Record Number 1, all we asked for was the parking and the path of travel into the restroom in the restroom. That's it. None of this landing outside, slope, and all these things. That was not part of our complaint. When they were quizzing my client in the deposition about all the problems he could think of there, he thought of all the problems he could think of, but that was not part of our case. We didn't even believe that that would be a readily ---- How much of the $65,000 is attributable to the three things that you mentioned that you asked for in the complaint? Well, we don't know about the parking space. That was done immediately. And that's painting. That's typically about $800 or less. And my Supplemental Exhibit Record Number 6 or 7 is the invoice that deals with the restroom. I think it's a total invoice of a couple thousand dollars. But the actual section for dealing with widening the restroom, which is my client's primary grievance, he just couldn't get in, was $1,100. And the path of travel, which you also mentioned was in the complaint. That's getting in. That's the doorway entrance. That path of travel into the restroom is the width of the doorway. Okay, so that's what you meant by path of travel, not through the ---- Into the restroom. Not from the parking into the restaurant? Oh, no, no. It's clearly stated as path of travel into the restroom. This is not from the public sidewalks into the building. And so this was a case where we were shocked that they spent all this money and did all these things. That was the argument that we made in our summary judgment motion was that my client's greatest grievance was they had eaten there about 30 times and could never get into the restroom. And the doorway was just too small for a wheelchair user. Going back to the intent question, you say failure to remove barriers, if that would be readily achievable. What about a knowledge element? What if we hypothesize a barrier that wouldn't be commonly known, that wasn't a question of common sense? Contrast swiping on landings is something technical. If you fail to remove that, but you also didn't know that that was a barrier, did you act with intent? I think you do. And the reason why is this. Because there's an affirmative duty to assess your property, to identify those barriers, and to remove them. As Mr. Frankovich said earlier, that's found under the Code of Federal Regulations. And you go out there, you make an assessment, you identify barriers, and then you have a plan for removing them. Your case doesn't really even involve that, as I understand it, because the things you were asking for were pretty commonsensical. They were. It had to do with a handicapped parking space, and it had to do with getting into the restroom. And so in this case, our argument would be, of course, Gunther hadn't been handed down when this came around, so no one was focusing on intent. But if we had been focusing on intent, I think our argument would have been, they've had control of this facility for two decades. They have more than enough financial wherewithal to have removed these barriers. They have complete ability, if they want to, to remedy the situation. The fact that they haven't gone out there and assessed their property, haven't fixed it, means that they don't intend to. There's no plan in place. It's clear they intend to maintain it in the condition that it's in. It's interesting, because you actually pleaded knowingly rather than intentionally. I'm looking at year 9, paragraph 12 of the complaint. Defendants knew their facilities were inaccessible and continued to maintain these facilities in an inaccessible condition, and in doing so, knowingly, continued to violate and interfere with the rights of disabled persons. Yeah, and that was based on information and belief on the fact that many times we've had ourselves had many cases against them. They're well aware of their obligations and have been for over a decade. And it's our understanding, this is our belief, that their practice is they wait until they get sued at a particular facility, then they fix it. But they haven't gone around and have a general plan to fix everything. We've had other cases where we've found discovery. Are there any plans fixing these things? And there's no general plan to get these things all fixed. But in this case, I think... Are they commonly owned? Yes, commonly owned. One of the... And so there's a tough issue on intent, there's no doubt about it. However, people are taking the Gunther decision, which has to be dealt with, and they're arguing for an animus standard, a motivating you have to intend to exclude persons with disabilities, and that's come up in this case. I know this is a little irregular, but in terms of the issue in the other case,  is stronger than intent instruction, i.e. It's much stronger, it's almost an insurmountable burden, and it would be unfair to read it into the... So even if an intent instruction would be correct, a motivating factor would win. Yes. And so the... In this case, one of the questions that were asked, the question that was asked at the deposition... So first of all, there's no stipulation in this case that there's no intent. I don't believe that to be the case at all. Certainly no formal stipulation. They asked my question at that deposition that we read. They said, do you have any reason to believe that they intended to exclude you from the restroom? We objected to that question on the basis of irrelevance, because asking a layperson an opinion or personal opinion-based testimony... Well, it's actually about facts, not opinions. Well, that wasn't the question. The reason to believe is a factual question, but go ahead. Right. But this is something that never got ruled on by the court. There was an objection interposed into the deposition transcript. What was the answer, though? It never got ruled on. The answer was no. He didn't have any reason to believe. The problem is, of course, we say reason to believe to exclude you from the restroom. You're asking a layperson. You're not binding them to some legal admission in a case, because if, in fact, this court were to rule, or any court were to rule, what does intent mean under Gunther? And they said, okay, here's what intent means, and they chose one of these options. And then if you were to ask my client, do you believe they intended to maintain their facilities in the condition that it was? I think he'd say, yeah. I mean, they have the ability to change it. Or he could have understood it to mean to prevent you from using the restroom. Right. Or he could have understood it to mean that they, I mean, they would be just as happy if I could use the restroom. They weren't trying to stop me from using the restroom. But, in fact, they had a situation where I couldn't use the restroom. That's right. If I could just summarize my position very quickly in my time's up. I would like the court to ignore Gunther, of course. I don't think it's good law. However, the court is going to have to deal with Inouye Watson and make its decision. I think Gunther is bad law for a number of reasons. A lot of those have been discussed very thoroughly here. Well, let me ask you specifically. As between overruling Leontini in favor of Gunther or certifying him to the California Supreme Court, which do you prefer? Oh, this is going to be a hard yes. Well, as an advocate, and sort of I really believe that Leontini got it right, they looked at Harris. They specifically looked at Harris and that very question. But we have a problem, which is even if we believe it, I don't know if we could do it. Yeah, I don't know either. Judge, first I'll give you two other options besides that. One of them was following Gunther and one of them was certifying him. In light of those two options, I'd rather have it certified to the California Supreme Court. If the court wasn't going to do that, was going to follow Gunther, would say I'm not going to certify it, we're going to follow Gunther, and they were going to make a determination in this case, I would ask for some guidance on the intent standard because Gunther does not say what intent there is, even though it does suggest it. It says something as obvious as the width to a restroom clearly implicates intent. They don't seem to be talking about a motive type thing. No, not at all. And in fact, in their case, the reason why they found there was an intent was that the client in that case came in during the middle of a remodel when the quote, the handyman, wasn't yet finished. And so this is something different than the kind of case that we have. And so I would ask that if this court was going to follow Gunther, that it would provide some guidance on what intent means in these cases, given this odd statutory construction. And also I would ask that the court reject the appellant's request that they be granted summary judgment in this case on the basis that there was some sort of stipulation about the lack of intent. If we're going to change the rules, it should go back to the court. We should be able to try that issue on intent with this new guidance in place. Thank you, counsel. Thank you. We did use up your time. Do you want a minute or so for a rebuttal or anything? Okay. We'll give you a minute. I think we've beaten intent into the ground. I will leave that be, other than just to offer one little example, not involving Del Taco, but in my view, what intent means. I know there have been issues on other occasions where you raise access barriers to a client, and they say, I need to make a business decision. I really need to devote X amount to other matters this year. I can't. I'm not going to fix that barrier. So in my mind, maybe that is intent, intent to leave it be. That's not what happened here. Well, we don't actually know. I mean, it wasn't tried, and the representation that's being made is that this is a unitary corporation that has good reason to know that many of its restaurants are not compliant and that has not bothered to do anything about that. So he may have to put that whole case on, but he may be able to prove it. Perhaps. It wasn't tried, although the fact is that Del Taco did do it and submitted evidence that even though it did do it, it couldn't have been done without great expense and great burden. And Mr. Handy stands here saying that Del Taco had more than enough financial wherewithal. There is no evidence in the record to show that. Quite to the contrary, where we've submitted evidence from our financial person at Del Taco who says it wasn't financially feasible, but we did it anyway. These are at least issues of fact that show that the court erred as a matter of law in granting summary judgment in favor of Mr. Munson, and at the very minimum it should go back to have these issues tried by a jury. Thank you, counsel. The case just argued is submitted. We appreciate the arguments of both sides. And our final case on this morning's docket is Molsky v. Foster Freeze.
judges: Graber, Berzon, Wilken